PENNSYLVANIA CAR COMPANY, a corporation existing under the laws of the State of Delaware, *v.* HARTFORD ACCIDENT AND INDEMNITY COMPANY, HARTFORD, CONN., a corporation existing under the laws of the State of Connecticut.

(*October* 8, 1930.)

PENNEWILL, C. J., RICE and HARRINGTON, J. J., sitting.

*William H. Foulk* for plaintiff.

*Clarence A. Southerland* for defendant.

Superior Court for New Castle County, No. 5, May Term, 1929.

PENNEWILL, C. J., delivering the opinion of the court:

The declaration in this case charges the breach of a surety or fidelity bond given by the defendant to "American Republics Corporation, and/or its subsidiaries, jointly and severally, as their respective interests may appear."

The declaration sets out that the plaintiff was and is a subsidiary of the American Republics Corporation, which is the owner of all the capital stock of the plaintiff corporation; that one Larkin F. Jordan was the Vice-President of said American Republics Corporation; that one of the positions covered by the bond, as shown by the schedule of positions attached thereto, was that of Vice-President of American Republics Corporation; that the said Larkin F. Jordan, as such Vice-President, had the active supervision and direction of the affairs and business of the plaintiff corporation; that the said Larkin F. Jordan committed a fraud upon the plaintiff, the Pennsylvania Car Company, by making false representations to the officials of the latter company, whereby he fraudulently obtained the sum of ten thousand dollars.

The defendant has demurred, generally and specially, to the declaration on the ground that the loss is not covered by the bond, because the defaulting officer was not an employee of the Pennsylvania Car Company.

The Court may, therefore, for the purposes of the case, treat the allegations of fact in the declaration as true. The pertinent and material language of the bond sued on is the following:

"The Hartford Accident and Indemnity Company, Hartford, Connecticut, (hereinafter called the surety), in consideration of an annual premium, binds itself to pay to American Republics Corporation, and/or its subsidiaries jointly and severally as their respective interests may appear (hereinafter called the Employer) within sixty (60) days after satisfactory proof thereof, such pecuniary loss as the employer shall have sustained of money or other personal

property, (including money or other personal property for which the employer is responsible), through the fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction or wilful misapplication committed directly or in connivance with others, by all employees actually in the service of the employer, who may now or hereafter occupy and perform the duties of any position named upon the schedule of positions attached hereto, and forming a part hereof, during the period commencing with the respective dates set opposite such positions in said schedule, and ending with the termination of this policy as provided in the fifth (5) condition hereof."

The American Republics Corporation is the holding, directing and controlling company of its subsidiary companies, of which the plaintiff is one. It is not denied that the defendant would be liable on its bond for the default of any officer of the holding company, or of any of its subsidiaries, provided the position of such officer was mentioned in the schedule of positions attached to and made a part of the bond, and he was, at the time of his default, an actual employee of the company that he defrauded.

In dealing with the legal question raised by the demurrer, the first thing that impresses the court is the comprehensive language of the bond. Its manifest purpose was to insure, not only the holding company, but also its subsidiaries against any loss that might be caused by the fraud of an employee. The only real question in this case is, whether the employee was at the time of committing the fraud, employed by the company that was defrauded within the meaning of the bond.

Larkin F. Jordan, the person who committed the fraud, was at the time of its commission, an employee of the holding company, being its Vice-President, a position covered by the bond. But he, as such Vice-President, had the active supervision and direction of the affairs and business of the plaintiff corporation, a subsidiary of the holding company, and while acting in such capacity committed the fraud complained of.

Certainly, the intent of the bond was to insure, and protect, both the holding and subsidiary companies against any loss caused by fraud on the part of any employee whose position is stated in the schedule of positions. And such purpose was a proper and reasonable one considering the power and control exercised by a holding company over its subsidiaries. It is not possible to regard

the subsidiaries otherwise than as parts or units of the principal or holding company. Together they constitute the whole. That must have been the thought of the defendant surety company in giving the bond in question. It would, we think, be a narrow and unwarranted construction of its obligation to hold that if an officer of the holding company, in the performance of his duties as such, commits a fraud on a subsidiary company, the latter company is not covered by the bond which compels the obligor to pay to the holding company or any of its subsidiaries, jointly and severally as their respective interests may appear, such loss as the employer shall sustain. If an officer of the holding company is required to supervise and direct the business of a subsidiary, he is, to the extent of his supervision and direction, properly engaged in the service of the latter company although he may be directly paid for his services by the holding company. The loss sustained in this case was caused by the fraud of an officer of the holding company while engaged in the business of the plaintiff, and in the matter of the employment, it is difficult to separate the holding company from its subsidiary.

The bond contains a further provision that the employee who committed the fraud must have occupied and performed the duties of a position named upon the schedule of positions attached thereto. As already said, the position of the officer who committed the fraud is mentioned in said schedule.

In reaching our decision that the defendant company is liable, we have given the language of the bond a reasonable construction, and such as we believe to be warranted by the purpose of the contract and the ends it was designed to meet. We cannot think it was intended or contemplated by the surety company that if an officer of the holding company, whose position was listed in the schedule of positions attached to the bond, was rightfully engaged in the service of a subsidiary company, and while so engaged committed a fraud on the latter company, the company would not be protected by the bond. The words "employees actually in the service of the employer" must not be so strictly construed as to defeat the real purpose of the bond. We construe those words to

cover employees of the holding company who are serving a subsidiary company in the performance of their duty, and while so engaged defraud the subsidiary company. In such case, while not actually employed and directly paid by the company defrauded, they are serving both the holding and subsidiary company, being engaged in the business of the latter under the direction of the former. While the two companies are separate and distinct in a legal sense, they are so closely related and interwoven in practical operation that we think it must have been the intention of the defendant surety company in giving the bond in question to protect a subsidiary company against loss caused by the fraud of an employee of the holding company who is directed to supervise the business of the subsidiary, provided his position is listed in the schedule of positions attached to the bond.

The demurrer to the declaration is, therefore, overruled.